CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n. CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n. CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n. Yes, sir. Good morning. Darren Brenner for CitiMortgage. There are three primary issues that I would like to address today. One of them, I believe, is different from the other cases before the Court, and it's where I'd like to start because it's potentially case dispositive. It's the bankruptcy issue. The HOA in this case reported both of the first two of three required notices, the delinquent assessment lien notice and the notice of default, in violation of an automatic bankruptcy stay. The District Court concluded that because the auction portion of the nonjudicial foreclosure sale was after the stay was lifted, that there was no stay violation. And respectfully, that was legal error. Under the N. Ray Schwartz case, any action taken in violation of an automatic stay is void. And as is a constant theme I think we see in these cases, and in particular these issues, we have a series of intervening authorities that have come out since the time that this order was issued. What's your strongest support, please? The strongest support would be it's a Nevada Supreme Court decision, so the bankruptcy components are not biting, but there is a state law component to these, and that's the Ellen Management Case 399P3D359 and SFRV Green Tree 385P3D582. Both of these cases involved the foreclosure notices being served in violation of the stay. In the Green Tree case, it's much like this case, although this one's unpublished and was issued before Judge Mahan's order. In this case, only one of three notices violated the automatic stay, but the Nevada Supreme Court extended that to say the fact that this notice was void impeached the entire propriety of the sale, and it set aside the entirety of the sale. We believe it's consistent with N. Ray Schwartz. But that's a different question. That's a state law question about foreclosure procedure. It's not a Federal question about what constitutes a legal proceeding that would violate the automatic stay. I think it's fair that we don't have a Federal court case that says this is what happens in a Nevada HOA non-judicial sale. What's important to remember about the non-judicial sale is that a non-HOA non-judicial sale, in general, is there no case law anywhere in the world about whether a foreclosure notice before their foreclosure is a violation of the automatic stay, which happens probably once an hour? None that we located and we looked. Counsel, I have a different question, if I may, about this argument. I may be misremembering because, as my colleagues have said, there are a lot of moving parts. But I don't recall that this was an argument that was made at the district court. Am I correct about that? If so, what effect does that have on our consideration of the issue? You are very much correct, Your Honor. It was raised in the complaint. It wasn't raised in the summary judgment briefing. But the court, sua sponte, addressed it in its order. And because of that, we've cited, I think it's 18 through 20 of our reply brief, we've cited analogous authorities from the Ninth Circuit and some that are squarely on point from the Fifth and Seventh that say it's properly before the court isn't. Because the district court reached it. Because the district court decided it. Yeah. There are square on cases in the Ninth Circuit saying that. I don't know if you can find them. There are square on cases. The other point I would like to make is that the landscape has changed so much. Back when we briefed this, Bourne Valley was good law. And we had every reason to believe that Bourne Valley ended the inquiry. That's the mindset of the parties who were ñ and it's not just Bourne Valley that's changed. We've got to, if I can move on to the commercial reasonableness and then later the Jessup argument, across the board things have changed. The Nevada Supreme Court has issued multiple opinions that we believe are in opposite with Judge Mahan's opinions. And he's even said that himself in at least one case that we've provided to the court. We've got, moving to equitable balancing, we've got three factors of unfairness here, three primary. One is the bankruptcy violation issue. If it doesn't void the sale automatically, it at least impeaches the validity of the notices. We know that under N. Ray Schwartz. And if we look at Shadow Canyon, footnote 11, another decision reached after Judge Mahan's decision. I don't really understand that point. If it's a notice that's ñ why does it impeach the validity of the notices? If the notice was void, I mean, Judge Mahan's point was, okay, the notice is void, but the auction was outside of the state, so the sale itself is okay. Our point is that even if that were true, the notice is still void, and that's clear under N. Ray Schwartz. You're going back to state law. Well, yes. Yes, pivoting to state law here. Pivoting to state law, trying to move quickly with the three factors of equitable balancing. Shadow Canyon, decided after Judge Mahan's order in this case, says bad notice is a factor of unfairness. That's in footnote 11. We also have the Miles Bauer unaccepted offer to pay the super priority portion of the lien. I understand that it was just a letter, there was no check. I do want to address that momentarily. But focusing on Judge Mahan's findings, he said it was bad because it didn't offer to pay the full amount, super and sub. He said it was bad because it didn't offer a nuisance abatement, despite no evidence there was any. And he said it was impermissibly conditional. Each of those points has since been raised and rejected by Bank of America v. SFR, the diamond spur decision. Judge Mahan recognized that himself in one of the many related cases called log cabin, which we provided in our notice of supplemental authorities. Second is that NAS didn't accept a valid offer is another factor of unfairness. And third, we have the HOA's representation in its publicly recorded documents, that no action to enforce a violation of the deed of trust will extinguish the bank's interest. Again, back to footnote 11 of the Shadow Canyon opinion. It says that that type of representation is a factor of unfairness that can invalidate a sale. I'm sorry, where is that provision? You're talking about the CC&R. CC&R, yes. You're talking about the CC&R. Yes. Yes, it's publicly recorded CC&Rs. Any one of these reasons should have been enough to defeat summary judgment and send equitable balancing to trial. Golden and Shadow would tell us that where price disparity is great, only slight, quote, unquote, only slight evidence of unfairness. We appreciate that. So let's go through the notice. Your argument is, forgive me for cutting to the chase, but I want to give you an opportunity to respond. And your argument about notice is that it was invalid as a matter of state law, not that you didn't get it. We're really talking about unfairness. So you had notice, albeit during the course of a bankruptcy proceeding. That doesn't strike me as particularly unfair. Apples and oranges, Your Honor, because I don't think we have our notice issues briefed. The law has changed so much I've tried to focus on what matters. The equitable balancing argument under Shadow, Wood, and Shadow Canyon assumes notice was given, assumes there was a valid sale. So what's unfair? Three things about the CC&R provision saying we wouldn't be extinguishing. Well, wait a minute. That CC&R provision, if we can, let's break them down, that CC&R provision talks about subsequent liens. I guess I'm not following. The CC&R provision says no action to enforce a violation. You've got to read the whole thing. No action to enforce a violation, well, no action to enforce any such provision shall affect, defeat, render invalid, or impair the lien of any mortgage. The action to enforce was the nonjudicial foreclosure based on a violation of the failure-to-pay assessments. And this. Did this mortgage predate the CC&Rs? Or did the CC&Rs predate this mortgage over there simultaneously? The mortgage was after the CC&Rs. The CC&Rs predated. So how did the CC&Rs help you? Well, the CC&Rs say if we foreclose on this property, if we do our action to enforce the lien, we will not defeat the deed of trust. Okay, I heard your argument, and I don't think it goes to my question, but I think you've done the best you can, so I'll get out of your way. As to your best argument about unfairness, equitable relief is you don't think the notice was adequate. Well. Or at least not valid under state law. Because it violated. Well, we think it was not valid under federal law, too, because it violated the bankruptcy stay. But you don't have a majority for that. Can you tell me why it was not valid under state law? It's as if it didn't exist. Because it was issued during the bankruptcy? Because it was issued during the bankruptcy stay. And then we have to tie that into the SFRV Green Tree case that I mentioned that said that's enough to impeach the proprietor of the sale. Because the answer to Judge Berzon's question is that you think you've got, you do, have Nevada state law saying that where a notice, right, under these circumstances was served during the course of a bankruptcy stay, as a matter of state law, that notice was deemed invalid. Is that right? That's what we believe under federal and state law, yes, Your Honor. I think that the answer is yes. Judge Berzon was asking under state law. Is that the answer to the question? Yes. Okay. Yes. All right. All right. And then I want to move on to the last issue, which is the Jessup decision, the intervening Nevada authority that we have. I do want to mention first, full disclosure, the Nevada Supreme Court recently re-heard Jessup on Bonk. Although it's possible the opinion could change, it's unlikely because the majority of the court opposed even re-hearing the matter. Anything is possible at this point. How does Jessup help you? Jessup found that a letter like the one in this case, admittedly, doesn't amount to a tender, but it did form the factual predicate for excuse of tender based on futility. But in Jessup, there was an affirmative statement that we're not going to accept your tender. So how does Jessup help you in this case, sir? Well, we believe that there was a statement that they weren't going to accept the tender. There's two answers to that. Sorry, did you say wasn't? There was. Didn't they just ask you for a different format? Well, I don't think it was just limited to that, Your Honor. I think it was two things. We sent the notice precisely to the address. And the notice of default said, if you have any questions about the amount you must pay, send it to this address. And they asked you to resend it in a different way, right? They said if you want, basically what they said was if you want a full payoff, and we asked for a super priority payoff,  Clearly they're talking about the resale of property. There are multiple inferences, I would agree. But my point is, I guess, or my question is much simpler than that. You sent something in the way and to the place that you thought was appropriate. You got a response saying, we need this in a different form to a different address, and you did nothing as far as I can tell. Is that true? I think that that's true, but you have to add one thing. The response also says, we will give you a different thing, which isn't the thing that you asked for. I have to concede there's multiple inferences that can be taken from that letter, but we are on a summary judgment standard here. Well, where does it say that we're going to give you a different thing? If we have your request for a payoff, please be advised that all payoff requests must be made. It doesn't say we're not going to tell you what the super priority amount is. Well, Miles Bauer, of course, didn't just request a payoff. I mean, the Miles Bauer's request was very specific, again, precisely to where it should go. Did you go look at this? Is there any evidence that anyone went to look at this website and found out that you couldn't get the super priority amount off it? Here's the bottom line, I think, and hopefully this addresses your question. Setting aside the inferences in our favor. Again, this was briefed at a time when JSEP didn't exist. We didn't have the opportunity to present the arguments because JSEP didn't exist. The arguments and evidence do exist, and not just making this up, I could refer the court to another Nevada federal court opinion involving the same letter. That says what? The same trustee that says it was futile to pay. It's a 2019 decision after JSEP. Did you submit a 28-J about this case? What case are you referring to now, sir? I believe this is the RH Kids v. MTC financial case, 367 FSUP 3D 1179. It's in one of our filings. There was also a response to a motion to strike. Could you give me the slide again, please? Sure. 367 FSUP 3D 1179. It's another opinion involving the same players. Wait a minute. Does it say that this response evidenced that any attempt to pay would be futile so that JSEP helps you? I believe the opinion no. This exact fact wasn't in that case. I believe that that case relied on testimony from NAS saying we would not.  This case demonstrates the record that we would be able to present and we would have presented if two things had been different. One, if we hadn't relied on Born Valley as we justifiably did at the time. That's different. Okay. But my point, Your Honor, is that we had no reason to hypothesize and think about cases that didn't actually exist at that point in time because we had a case-winning argument. We would have had to divine. I understand you relied on Born and then Born went away, and that's put you in a bind. But I'm trying to figure out whether you made this argument, sir. And I don't mean you, but, you know, if your client advanced this argument or can show that any of it. In other words, you've suggested that JSEP helps you. JSEP is a case that says you don't have to tender if the homeowners association said we're going to reject. In other words, that it would be futile. And I'm trying to figure out what your best support is. And I think Judge Berzon is, too, and Judge Graber. Because I think you inquired. They said you need to submit something online. And I think I read the record the way Judge Graber does, which is that your client didn't respond. You conceded as much. So where are you? What's your best shot here? We don't get there without remand. Because we don't get there without remand for the court to consider the JSEP case and the evidence that NAS would not have accepted because it's not in this record. NAS would not have accepted what? NAS would not have accepted. Tell me what the evidence would have been. NAS won't accept the super priority portion of the lien. It's on the record in the case I cited. And it's in the record in dozens, if not hundreds, of cases. Okay. That's what I was trying to get at, sir. When you say it's on the record, it's on the record that NAS took the position that it would not accept super priority? That's the position it was taking in these cases? That's the position it was taking in these cases. Did you argue that in your briefing to us? We did. We argued that in the request to remand, which was in response to the court's order. But it wasn't in the underlying briefing, Your Honor, because JSEP didn't exist. Again, we were relying on the viability of Bourne Valley. We did argue that the offer letter itself was a tender. And this case was briefed earlier than some of these other cases that are before us? This case was briefed before every single case that I've mentioned, before Diamond Spur, before JSEP, before, you know, for that matter, before Arlington, before all of the supplemental authorities. And we haven't even gone over the ones that say, you know, on equitable balancing, you've got to look at how low the price is and then you determine how much unfairness that you need. I mean, that's the issue here is it's a matter of fundamental fairness where this is an incredibly evolving and unique area of law. Counsel, I mean, and you're now like five minutes over your time, but we are awash in supplemental authority. I've done nothing but read more than everything I ever wanted to know about foreclosure law in Nevada. I've been reading, reading, reading, reading, reading. But you've got to make the argument. Was there a request in our case that you'd be allowed to rebrief this in light of these new authorities? Yes. We can't make the argument for you. Yes, Your Honor. There was after Arlington came out rejecting Bourne Valley, there was a. . . Yes, the clerk's order. Yeah, the clerk's order about whether this could be remanded. Our response was essentially it was probably not based on Arlington, but it should be remanded based on JSEP. Our opponent filed a motion to strike that. We filed a response, and the court said it would be addressed at this hearing. That's my recollection, please. Right, and I think that you just argued. . . I mean, I read it. You argued JSEP in that supplemental. That is correct. Yep. Okay. Thank you very much, sir. Good morning, Your Honors. My name is Mike Beattie. May it please the Court, I represent Eagle and the Cross LLC and Susan Patchen. As a preliminary matter, I think I can dispose of several of these arguments advanced by the appellant, specifically that there was any violation of the bankruptcy stay here. As the Court correctly noted, there was no argument regarding the bankruptcy stay below, and in fact, there was no evidence presented either. Yes, but the judge recited the facts in the complaint that talk about the dates and the timeline. And those don't seem to be contested, and he reached the issue. So do you have any authority about that? Well, Your Honor, I have some factual authority from the bankruptcy itself. It's axiomatic that the discharge of the debtor is what terminates the bankruptcy stay. Had there been any evidence presented to the Court, either below or above, it would have demonstrated that the bankruptcy stay terminated on . . . He had those dates that are alleged in the complaint. He recited those. Exactly. And so the discharge of the debtor occurred long before any of the notices were required. Right. And what we're trying to get at is opposing counsel's argument, which is that the notices that were filed during the course of the bankruptcy stay, just the notices may have violated the bankruptcy stay. And to be clear, Your Honor, the notices were not filed during the course of the stay because the discharge of the debtor occurred long before . . . Oh, I'm not sure that's right. Your Honor, I have the document here, and the discharge . . . I'm looking at ER 453. What are you looking at? Your Honor, I don't have the . . . The petition was filed in February of 2012. And on May 30, 2012, there's an order discharging the debtor. Yes. And the file was closed. The bankruptcy case file was closed October 17, 2013. What's the date of the notice we're talking about? Your Honor, the first notice was filed in 2013, as was the second notice. And so each of those . . . But you're talking about the interval, the delta between the discharge and the date the file was closed. Exactly, Your Honor. Those notices were made between the discharge and the date the file was closed, but it's axiomatic that the bankruptcy stay terminates at the discharge of the debtor. Yes, we have those dates. All right. Very good, Your Honor. So with bankruptcy not being an issue in this case because there was no violation of the stay, that is neither evidence of unfairness or oppression, nor is it a basis to otherwise set aside the sale. Okay. What about the fact that they did make an inquiry in this case? There's other cases where the lender was silent. Certainly, Your Honor. This lender was not silent. This lender raised its hand and said, We want to satisfy this, made inquiry, and then said, No, we're not in response to a fax. You have to submit it online for some reason. Well, Your Honor, as you correctly noted, the response came two days after the letter was received. They said, Please submit this online form. And what would have happened if they didn't? Well, Your Honor, I can't speculate, but what I can suggest is that my understanding is that at this particular time frame, a ledger would have been provided, and they could have accepted a payment. I don't know whether or not they would have. Opposing counsel argues that during this time frame, when things were admittedly up in the air, and I'm not casting aspersions, I take that as a given, that the state of the law was up in the air, and then his client certainly had good reason to be relying on Born Valley for part of this period. But his other argument is that during this time, your client was taking the position across the board in many cases that tender the super-priority provision would have been futile, that they weren't taking that. I'm sorry. You just heard him. He just said that during this period of time, your client was taking the position in response to these inquiries, that it wouldn't accept just the super-priority provision. Is that right? Well, to be clear, Your Honor, I represent the purchaser at the HOA sale. Forgive me. And so I'm unable to speculate as to what— Well, but you represent which purchaser? Is this SFR? No, Your Honor. I represent Eagle and Cross LLC. Oh, Patchen. Patchen, forgive me. All right. So were you involved in these other cases where this homeowners association had taken that position? To the best of my knowledge, Your Honor, I am not involved in any other cases involving Corte de Madera Homeowners Association. Is Patchen one of the people who's purchased several of these properties? I believe Ms. Patchen has purchased approximately seven properties. Okay. None of which was she the purchaser at the sale. Okay. Was it the same homeowners association involved in the cases that you're involved in? Not to my belief, Your Honor. Okay. Thank you. So the short version is you don't know what would have happened if he actually had gone to this website. Well, Your Honor, I don't know specifically what would have happened. And at the same time, neither does the appellant. Right. So his argument is since nobody knows and since it wasn't pertinent at the time that he was litigating the district court, he ought to be able to go back to the district court and litigate that. And, Your Honor, I don't believe that there's any authority for allowing a litigant who has failed to raise an argument at the district court again fails to raise it. But he didn't have a reason to raise it, as he points out, because of the Bourne Valley case. Well, Your Honor, I disagree. I don't believe that there's any authority which would say that simply because a court has not affirmed a position on appeal in another action, you're excused from making that argument. I'm confused about what you're saying. If at the time you were litigating the district court and at the time of the briefing in this case, Bourne Valley was good law, right? I believe that Bourne Valley had not yet been expressly overturned. However, the Nevada Supreme Court had clarified. Well, so they had a Ninth Circuit authority, right? They probably were feeling pretty comfortable about that. And now the Nevada Supreme Court thinks otherwise, and we understand that. But to go back to Judge Berzon's question, why would they ‑‑ they're not really required to, right, sort of make every argument in the book. And they were supposed to argue that even though this notice was no good and the statute was no good, you just told us that at the Ninth Circuit, just in case the Nevada Supreme Court decides otherwise and then you decide otherwise, I'm going to make another argument and put in some other facts that have nothing to do with that? Well, Your Honor, my position is that in light of the fact that Bourne Valley was a limited decision which was questioned at the very minimum, questioned by jurists both in the Federal system and in the State system. But it was the law of the Ninth Circuit. The law in the Ninth Circuit was that Bourne Valley was controlling. However, that decision, in my view, was limited. It did not clarify whether or not actual notice of the foreclosure sale would cure those defects. What was the date of your sale? Sorry. The date of the sale. What I'm trying to get at quickly is whether the date of your sale pre- or post-dated Bourne Valley. The date of the sale pre-dated Bourne Valley. Right. So they weren't relying on any of that when they decided not to respond to the notice of foreclosure. That is absolutely correct, Your Honor. This sale pre-dated SFR. But during the litigation, in terms of the question of what would have happened if they did do this. If that's the argument, right. They didn't have the opportunity. They might have had the opportunity, but they had no reason to go into any factual questions of what would have happened if they had followed these directions. And while it is understandable why they declined to make those arguments, I don't believe there's any authority which changes the fact that they waived those arguments by failing to make them. It may have been easier. We often remand in light of new law. Because when it would have affected the factual development. I mean, if we could decide the legal issue, that's different. But if what could have affected the factual development, I don't know what law you were looking for, but I can tell you that we've done it plenty of times. And the difficulty in this case is the clerk's office, not our panel, but the clerk's office sent out an order asking folks, what about Bourne Valley? And the response we got in this case really just pointed to Jessup. And, Your Honor, our response was that that failure to raise those arguments below resulted in a waiver. What about forget below? What about in this court? In response to the clerk's order, where are the arguments raised? I agree, Your Honor, that they were not raised by the appellant. Well, we were just told that he did ask for a remand in light of Jessup. Did he? Is that not true he didn't? That goes to the futility issue. Yes. Exactly, Your Honor. And those arguments were available to them below. They were made in other cases by this firm and, I believe, by this appellant. When you keep talking about below, that's not really going to judge Berzon's question. Okay. Because she's talking about that's all pre-Bourne Valley. Oh, during Bourne Valley. Forgive me. Well, thank you. Pre-Arlington and so on. West and Star Hill and right. Certainly. During the course of the period in which Bourne Valley was good law, this firm and this appellant raised this argument in other cases, similar cases, this futility argument. And yet it declined to do so in this specific instance. This was not a case in which this appellant had no idea that this argument might be available to them. They elected not to make it in this specific case. And that is to their detriment. Okay. I'm happy to answer any other questions the Court may have. Thank you very much. Thank you, Your Honor. We'll give you one minute in rebuttal. Counsel, I think I'm going to have to go back and watch the tape. I think I misunderstood your argument about bankruptcy, about when the notices were filed. Did I misunderstand? No. The discharge happened before the notices were filed, but the closure didn't happen until after the notices. Thank you. I just reviewed the dates. That's Bigelow 68 F3D 127. It says we look at the date of the closure because the bankruptcy state protects not just the debtor, but the property of the estate as well. So that's our key date. But I really wanted to focus in on the NAS issue. Counsel said he's not aware of another case involving this HOA. There wouldn't be. It's the trustee. It's the biggest trustee in Nevada, NAS. They were the ones who took the position on behalf of all of the HOAs. Where did you raise it, Counsel? Where did you raise it? You pointed to Jessup in your response to the clerk's order. Can you just help me out with where I am? Because that's where we need to look, right? Is that your response to the clerk's order? I've got it right here, actually. Because it's at my fingertips, I don't have the response to the clerk's order at my fingertips. I'm sure it's in my binder. But it was raised, I can see that it's raised in detail in the opposition, in the response to the motion to strike, which was the briefing that Plaintiff filed to strike our request to remand based on Jessup. I have it right here, in the opposition to the motion to strike. That is correct. That's the first time you raised Jessup? No, I'm sure it was raised in response to the ‑‑I just don't have it in front of me.  Yeah, that's why it was moving to strike. I'm sure it was raised in that order. The important point I wanted to get out for the court as well, if I could, please. October, it was either October 5th or 6th, the Nevada Supreme Court heard an en banc oral argument involving the utility issue with this same trustee. But Jessup has two different points that it made. We don't know why they took it en banc. We don't have that. I checked. I checked. They advanced both Jessup points in the request for en banc rehearing, right? Well, no, I'm not talking about Jessup. I'm talking about a different case. I'm talking about a case involving this trustee. You asked the question about, you know, what would this HOA have done? Would it have accepted the tender? Yes. That is a Nevada Supreme Court case where the court, the district court below, found that NAS would not have accepted a super priority payment, and that is now before the Nevada Supreme Court. Can you give me a citation for that? I would have to do it supplementarily, Your Honor. I thought it was argued October 5th. It is SFR v. Bank of America. But isn't that your futility argument? Well, the futility argument is really Jessup. Jessup is the published opinion. I'm pointing out that there is a case. You have to show that it would have been futile, and the problem is you didn't respond to the direction to submit your request online, and now you're wanting us to say that we need to go look at this case that we don't have an authority for that tells us that this particular agent was taking the position that it wouldn't accept payment. That and the RH Kids case, and I've got to dovetail that with all of the argument that these are all things that would have been raised at Jessup and live authority at the time. It still all rolls back to the Jessup decision, Your Honor, and that's why we would request remand on that basis and remand on the equitable balancing issues. But at the time that this case was litigated, I know Born Valley was there during the litigation, although not during the incidents. Was there any case law that said that a proffer was sufficient? There are Nevada cases that go back several decades that talk about certain instances where tender could be excused, and I actually do think that some of those were cited in the briefing, but none of them addressed futility. There's also SFR where the Nevada Supreme Court says here's how you satisfy it, here's what you can do, including when they haven't given a super priority portion, what you can do is you can pay the whole thing and then you can seek, right, you know that case law. So they had said how to satisfy it. Absolutely. And what I can tell you in every one of these cases, and it's NAS's sworn testimony across these cases, they never would accept nine months in satisfaction of the super priority. They rejected every second. But did you have even the entire, did you have any amount at that point? No, just the full amount of the lien. But that was super and sub. The next case you're going to hear. You could have paid the super and sub on the Nevada Supreme Court in the SFR case that said that will do it. If you reach that ruling, it would contradict Nevada law. You have the option to do that. You haven't answered my question. Yes, that would work, but you don't have to pay more than you owe. We're not the insurer for the entire amount of the lien. You only owe the super priority portion. But then it said you could get the money back. Well, first of all, that portion of the opinion was abrogated, and it struck from the opinion because that dealt with due process.  I'm just responding to your point, which is that you have the amount. You didn't follow through with the online request. So you did have an ability to pay the whole amount. You did have a way to do that. You did, but if you find that, that we lose on that basis, it contradicts the Diamonds for Opinion, the published opinion from the Nevada Supreme Court that says all we had to do was pay nine months. Plus nuisance. Nuisance abatement if there was any, yes. Was there any in this case? There's no evidence of any. The ledger that's cited in the briefing doesn't show any nuisance abatement. Okay, thank you very much. Thank you both for your argument.
judges: Graber, Berzon, Christen